

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable James M. Crane
District Attorney
Conroe, Texas

Dear Sir:

Opinion No. O-6546
Re: Does the defeat of the stock
law in county-wide election
repeal the existing laws in
subdivisions of the county?

Your recent request for an opinion of this department reads in part as follows:

"....

"In a county wherein a stock law election
has been held under Article 6954 R.C.S., at which
time two simultaneous elections were held in said
county, the same being divided into two subdivi-
sions, and as a result of said elections, one
subdivision voted not to have a stock law, and
the other subdivision voted to have it; and im-
mediately thereafter, under the provisions of the
last clause of Article 6964 R.C.S., a county-wide
election was held, if upon said county-wide elec-
tion being held, the stock law was defeated, would
the effects of said county-wide election be such
that there would be open range throughout the en-
tire county; or would the rule as provided in
local option liquor elections be applied, (which
is that when a subdivision holds an election and
votes out the sale of intoxicating liquors, etc.,
an immediate countywide election including this
subdivision cannot change it's status, but the
status can only be changed by another election,
subsequently, held in that same subdivision that
votes it out)?"

The splendid brief submitted with your request has
been very helpful to the writer and in the absence of Texas

Honorable James M. Crane, Page 2

decisions to the contrary we agree with your conclusion that by analogy, the local option liquor decisions should be applied to your situation.

In the process of seeking out the intent of the Legislature and grasping the policy behind these stock law provisions we think it should be borne in mind that during the period in Texas which saw the emergence of those laws a large part of our state was undergoing the transition from a pioneer open range country to that of the settled farming interests. It was said by Judge Pleasants in Stokes v. Winfree, 57 S. W. 918, that, "The general policy of the Legislature, as shown in all of the statutes upon the subject, has been favorable to the adoption and extension of the stock law, in order that the agricultural interests of the state may be relieved of the expense of fencing against the depredations of stock; . . ." In fact, prior to the Act of 1899 there was no method of repealing a stock law open to a county or subdivision once it had been adopted. Stokes v. Winfree, supra. A reading of Arts. 6954 et seq., V.A.C.S., reveals clearly that the Legislature intended to inaugurate the principle of self-determination on the question of the adoption of the stock law in the counties named therein as well as in the subdivisions of these counties. The statutes favor the progressive adoption of the stock law, allowing the larger unit of the county or the entire county to impose its adoption of the law upon smaller units contained therein which do not have it. The local option provisions of the stock law are similar to those of the liquor law. See Art. 666-32 through 666-40a, V.A.P.C. In so far as the question here involved is concerned we think the local option liquor decisions are persuasive.

Your question is whether the defeat of the stock law in a county-wide election works a repeal of the stock law in a subdivision of the county which had previously adopted it. The case of Aaron v. State, (Cr. Apps.), 29 S. W. 267, passed upon the question of whether the defeat of prohibition in a county-wide election abrogated a prohibition status previously voted by one of its precincts. The court in that case said,

"... It appears from the record that before the sale was made an election had been held under the act of 1893 for the entire county, which

Honorable James M. Crane, Page 3

resulted in the defeat of prohibition. It is contended this defeat abrogated the law in Precinct 8. In other words, if local option is legally in force in a precinct, made so by election in that precinct, that a subsequent election, held for the entire county, resulting against prohibition, has the effect to repeal or abrogate local option in that said precinct. To this proposition we cannot agree. By reference to the various provisions of the local option statutes we are informed that the people of the entire county cannot express their views upon this subject so as to defeat or repeal local option in any subdivision of the county. Nor can the people of a precinct by vote defeat prohibition in any subdivision of that precinct town or city. The county may force prohibition by a vote over precincts which are not in favor of it, and so may a precinct over cities, towns, or subdivisions thereof that may not be in favor of it, but cannot force, by vote, repeal of it in any town, city, or subdivision thereof. The people of the county, outside of the territory to be affected, have no right to vote at all as to the law in that subdivision. Again, the people of the county have never voted on the proposition that local option should or should not prevail in Precinct 8. They voted on the proposition whether prohibition should prevail in the whole county. Great many voters might oppose prohibition for the county, and yet heartily support it for precincts in which they have no police force, as well as for other reasons sufficiently cogent to their minds."

The rule in the Aaron case was reannounced in Jackson v. State, 118 S. W. (2d) 313. We think the reasoning in these cases is of equal force when applied to the stock law situation. The majority of the voters in a county-wide election, voting "for the stock law" in the entire county, necessarily determine by their vote that the law shall be effective in every subdivision of the county. On the other hand, where a majority in a county-wide election, votes against the stock law for the entire county, it cannot be said that the electors are likewise voting against the stock law for each and every subdivision of the county. Certainly a voter might disfavor the adoption of the stock law in an entire county composed of

Honorable James M. Crane, Page 4

both farming and ranching areas, while at the same time favoring the adoption and enforcement of the law in a subdivision suitable for farming only.

It seems to us that our views on this matter are strengthened by the fact that Article 6964 provides in part that, "the defeat of the proposition for a county shall not prevent another election from being held immediately thereafter for any subdivision of such county, nor shall a defeat of the proposition for any subdivision prevent an election from being held immediately thereafter for the entire county." If it had been intended by the Legislature that the defeat of the stock law in a county election would result in the creation of a county-wide status or county-wide repeal of the stock law, then it would seem senseless to authorize the immediate alteration of such a status by any subdivision.

It is our conclusion that the defeat of the stock law in your county would not alter the status of any of its subdivisions.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Eugene Alvis*

Eugene Alvis
Assistant

EA:mp

APPROVED JUN 4, 1945

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN